UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOLENE HARTJE,<br><br>                              Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>                              Defendant. | Case No. C09-5486KLS<br><br>ORDER REVERSING THE<br>COMISSIONER'S DECISION TO DENY<br>BENEFITS AND REMANDING THIS<br>MATTER FOR FURTHER<br>ADMINISTRATIVE PROCEEDINGS |

Plaintiff, Jolene Hartje, has brought this matter for judicial review of the Commissioner's

finding of non-disability and denial of her applications for disability insurance and supplemental

security income ("SSI") benefits.  The parties have consented to have this matter heard by the

undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure

73 and Local Rule MJR 13.  After reviewing the parties' briefs and the remaining record, the

Court finds that, for the reasons set forth below, the Commissioner erred in determining plaintiff

to be not disabled, and therefore hereby orders that this matter be remanded to the Commissioner

for further administrative proceedings.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 50 years old.[1] Tr. 30.  She has a high school education and past

relevant work as a certified nurse's assistant and general cashier. Tr. 103, 118, 232-33, 274, 277,

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public
Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the
United States.

ORDER - 1

369.  On June 22, 2004, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of July 5, 2003, due to fibromyalgia, hypertension and anxiety.[2]  Tr. 220, 263, 268, 863B, 863F-863G, 863K-863L.  Her applications were denied initially and on reconsideration. Tr. 220, 237, 250, 253.

A hearing was held before an administrative law judge ("ALJ") on March 27, 2007, at which plaintiff, appeared and testified, as did a lay witness and a vocational expert. Tr. 864-95. On June 13, 2007, the ALJ issued a decision, in which he determined plaintiff to be not disabled, finding specifically in relevant part:

(1)   at step one of the sequential disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2)   at step two, plaintiff had "severe" impairments consisting of fibromyalgia, a panic disorder, a pain disorder, and rotator cuff tendonitis;

(3)   at step three, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings");

(4)   after step three but before step four, plaintiff had the residual functional capacity to perform at an exertional level consistent with sedentary work, but with certain additional non-exertional limitations[4];

(5)   at step four, plaintiff was incapable of performing her past relevant work; and

(6)   at step five, plaintiff was capable of performing other jobs existing in

---

[2] Plaintiff previously had filed applications for disability insurance and SSI benefits, with respect to which she ultimately was found to be not disabled by the Commissioner (a decision which was affirmed by this Court). See Tr. 2-3, 10-18, 22-28, 30, 37, 61-67, 184-211, 220.  Accordingly, those applications are not currently before this Court for its review.

[3] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[4] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

ORDER - 2

significant numbers in the national economy.

Tr. 220-34.  Plaintiff's request for review was denied by the Appeals Council on July 25, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 212; 20 C.F.R. § 404.981, § 416.1481.

On August 7, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3).  The administrative record was filed with the Court on October 21, 2009. (Dkt. #12).  Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits for the following reasons:

(a)    the ALJ erred in assessing plaintiff's credibility;

(b)    the ALJ erred in assessing plaintiff's residual functional capacity; and

(c)    the ALJ erred in finding plaintiff capable of performing other work existing
in significant numbers in the national economy.

As noted above, the undersigned agrees that the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, hereby orders that this matter be remanded to the Commissioner for further administrative proceedings.  Although plaintiff requests oral argument, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

ORDER - 3

Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one

rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler,

749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Assessment of Plaintiff's Credibility

        Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker,

694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility

determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility

determination where that determination is based on contradictory or ambiguous evidence.  Id. at

579.  That some of the reasons for discrediting a claimant's testimony should properly be

discounted does not render the ALJ's determination invalid, as long as that determination is

supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

The ALJ "must identify what testimony is not credible and what evidence undermines the

claimant's complaints."  Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless

affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at 834.  The evidence as a

whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir.

2003).

        In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273,

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

ORDER - 4

physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

In this case, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to produce [her] alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects" thereof were "not entirely credible." Tr. 228. The ALJ specifically discounted plaintiff's credibility in part because her limitations were "not fully supported by the medical evidence," stating further that she had "demonstrated positive trigger points and some limitations of range of motion in her shoulder and back, but otherwise, physical examinations as documented by Dr. [Iftikhar A.] Chowdhry's treatment notes [had] been within normal limits." Id. This was a valid reason for discounting plaintiff's credibility.

A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). A review of Dr. Chowdhry's treatment records does show that other than consistently noting plaintiff had "multiple tender points spread all over her body," and later notations of "[m]arked tenderness" in her left arm and "decreased range of motion" in her left shoulder at times, the clinical findings obtained by Dr. Chowdhry were wholly unremarkable as noted by the ALJ.[5] See Tr. 456-57, 460, 464-65, 468-69, 472, 476, 592-93, 599, 608-09, 614-15,

---

[5] Nor does the fact that plaintiff was found to have multiple tender points and marked tenderness make these clinical findings any substantially less unremarkable, given that they necessarily are based on plaintiff's own self-reporting regarding the level of tenderness she felt, and that, as discussed further herein, the ALJ properly found her to be less than fully credible overall. See Tonapetyan, 242 F.3d at 1149 (medical opinion premised on subjective complaints may be disregarded where record supports ALJ in discounting claimant's credibility); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (physician's opinion premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where subjective complaints have been properly discounted). In addition, although a diagnosis of fibromyalgia may not be rejected solely on the basis of lack of objective medical evidence, this does not mean an ALJ is required to accept the alleged severity thereof without sufficient clinical support therefor. See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (improper to effectively require objective evidence for condition that eludes such measurement). Similarly, the "decreased range of motion" finding here gives no indication as to what extent, if any, this affected plaintiff's actual ability to perform work-related activities. It is this latter specific determination, not some generalized finding of decreased ability that

ORDER - 5

620-21, 625, 631-32, 637, 643-44, 649-50, 656-57, 662-63, 679-80, 687, 694, 701-02, 709, 715, 721, 726-27, 732-33, 738-39, 744, 756, 762, 767, 773, 779.  The record also is largely devoid of other objective physical findings indicative of significant, let alone disabling, limitations. See Tr. 148-51, 154-55, 166-67, 429, 444-45,584-85, 750-51, 799-800, 802-03, 845, 851.

  The ALJ next discounted plaintiff's credibility in part for the following reasons:

> . . . The claimant has alleged a severe anxiety disorder, but she has failed to seek any other mental health treatment aside from receiving medication from her primary care physician, who had to discontinue Xanax because the claimant was overmedicating herself (Ex. C17F/53).  Were the claimant's mental health symptoms as severe as alleged, she would likely seek the help of a mental health professional in an effort to improve her condition.

Tr. 228.  Here too the Court finds the ALJ did not err overall. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack of consistent treatment, and noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain).  Although the Court does agree that the evidence in the record fails to support the ALJ's statement that plaintiff in fact was "overmedicating" herself (see Tr. 228 (Dr. Chowdhry merely noting that Xanax was being stopped because plaintiff was on three drugs from same class), it was not unreasonable for the ALJ to posit that plaintiff would first seek counseling or other similar treatment in an attempt to address her mental health issues prior to applying for disability benefits.

  Plaintiff argues there is no evidence in the record establishing that she had access to such treatment (noting she was on welfare and claiming she could only obtain treatment by way of

---

matters in deciding whether a claimant is in fact disabled.  As such, while it may be as plaintiff asserts – though the Court makes no finding in that regard here – that "positive trigger points" and "debilitating pain" may be among "the most recognized features of fibromyalgia" (Dkt. #16, p. 14), that assertion simply is not sufficient to meet her burden of proof here. See Tackett, 180 F.3d at 1098-99 (claimant has burden of proof on steps one through four of the sequential disability evaluation process).

ORDER - 6

medical coupons), but this turns the burden of proof on its head.  Rather, plaintiff is the one who must come forth with evidence that being on welfare and having medical coupons prevented her from gaining access to affordable, low cost (or even free) treatment.  Plaintiff, however, has not done so or provided any other explanation demonstrating lack of such access here.

The ALJ also noted that plaintiff's "symptoms improved greatly with physical therapy, as evidenced by her own statements and the observations of her therapists," pointing in particular to the fact that she  had reported "'hardly taking any pain medication' in October 2006 . . . , when previous records establish[ed] that she was taking a great deal of medications." Tr. 228-29.  This clearly is a legitimate basis for discounting her credibility as well. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount credibility on basis of medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  As such, the Court rejects plaintiff's contention that these self-reports "in no way" implies she had an ability to engage in competitive employment. (Dkt. #16, p. 15).  Indeed, that plaintiff was at a point where she was no longer taking much in the way of pain indication, strongly indicates she could function at a level greater than that indicative of disability, at least in terms of pain.

In addition, the ALJ noted that while plaintiff had indicated she was "very limited" and had testified that she "rarely left the house and could only perform activities for a short amount of time," more "recent treatment notes from physical therapy establish[ed] that [she] was able to carry her 17 pound grandchild around the grocery store." Tr. 229.  The Court agrees that the fact that plaintiff went to the store on this one occasion does not necessarily belie her allegation that she rarely left the house.  However, the ability to carry a 17 pound child around a grocery store does indicate a greater ability to function physically than is claimed by plaintiff.  The Court also rejects plaintiff's contention that it was reported at the same time that it would not have been

ORDER - 7

possible for her to carry her grandchild around the store without an increase in the amount of

pain medication she was taking.  Rather, it was reported she was able to do this without any

increase in her pain, which she "could not have done before." Tr. 537.  Even if plaintiff is correct

here, though, the fact that she could function better on an increase in her pain medication, merely

further supports the ALJ's determination that she experienced significant medical improvement

in her condition.

The ALJ also discounted plaintiff's credibility for the following reasons:

> . . . [T]he treatment notes of treating physician Dr. Chowdhry consistently
> show that he recommended the claimant engage in daily exercise or walking.
> It is unlikely that Dr. Chowdhry would suggest activities that the claimant was
> not capable of performing.  When considered with the claimant's daily
> activities, including preparing simple meals, performing light housework,
> these activities belie the claimant's contention of debilitating symptoms and of
> limitations greater than the capacity for sedentary work found in this decision.

Tr. 229.  Plaintiff argues the fact that Dr. Chowdhry consistently recommended daily exercise or

walking for her, does not mean she actually had the physical capacity to do them or to the degree

suggested.  But the Court agrees with the ALJ that it is highly unlikely that as plaintiff's primary

care physician over a period of several years, he would have recommended she perform activities

he did not feel she was physically capable of performing.

On the other hand, the Court finds the fairly minimal activities set forth by the ALJ above

and reported by plaintiff, do not in themselves undermine her credibility regarding her symptoms

and limitations.  To determine whether a claimant's symptom testimony is credible, the ALJ may

consider his or her daily activities.  Smolen, 80 F.3d at 1284.  Such testimony may be rejected if

the claimant "is able to spend a substantial part of his or her day performing household chores or

other activities that are transferable to a work setting." Id. at 1284 n.7.  The claimant need not be

"utterly incapacitated" to be eligible for disability benefits, however, and "many home activities

ORDER - 8

may not be easily transferable to a work environment." Id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (recognizing disability claimants should not be penalized for attempting to lead normal lives in face of their limitations). The record fails to establish that plaintiff could perform the daily tasks identified by the ALJ for a substantial part of her day or that they were transferrable to a work setting.

Lastly, the ALJ discounted plaintiff's credibility in part on the following basis:

> . . . The claimant testified that she quit her last work at the retirement home due to her physical problems, however, she reported to consultative examiner Dr. [Tim] Truschel that she was "not invited back to work" after she took time off to be with a grandchild that was born prematurely (Ex. C7F/3), a reason unrelated to her physical or mental impairments. Her inconsistent testimony appears self-serving and indicative of a secondary gain motivation, but also raises some question as to the general veracity of her allegations to providers and in written statements. . . .

Tr. 229. The Court agrees with plaintiff that this was not a legitimate reason for finding her to be less than fully credible. What Dr. Truschel actually reported plaintiff told him reads as follows:

> The claimant's last employment was sometime in August 2003, when she was working being an aide at an assisted living home, taking care of older people, which she dearly enjoyed. She paid for this terribly, physically, and would be hurt and thrown in to fibromyalgia if she had to work any kind of workweek that was extensive. She was unable to continue after she took time off to be with one of her grandchildren born premature. Her level of worry is high for this child. She was actually not invited back to work past that point.

Tr. 448. Thus it is clear – at least based on this self-report – that plaintiff was having significant physical difficulty performing her last job. In addition, that self-report gives no indication as to exactly why she was not invited back to work. Read in context, that last statement could just as, or more, easily be read to mean she was not invited back to her past job due to the difficulties she had performing it, rather than because she took time off to be with her grandchild. Accordingly, the record does not support the ALJ's contention that plaintiff's testimony was inconsistent here or that it was self-serving, lacking in veracity or indicative of secondary gain.

ORDER - 9

Nevertheless, the fact that some of the reasons an ALJ gives for discounting a claimant's credibility are improper does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record overall, as it is in this case. Tonapetyan, 242 F.3d at 1148.  The Court finds, therefore, that the ALJ properly discounted the credibility of plaintiff for the valid reasons noted above.

II.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the following  physical residual functional capacity:

**. . . [T]he claimant has the physical residual functional capacity to perform activities consistent with a sedentary exertional level;**

ORDER - 10

**specifically, to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, to stand and/or walk at least two hours in an eight-hour workday, and to sit about six hours in an eight-hour workday, without limitations regarding pushing and/or pulling the above amounts. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  She cannot climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extreme heat and cold, wetness, humidity, and hazards. . . .**

Tr. 226-27 (emphasis in original).  Plaintiff argues the above RFC assessment is not supported, because the ALJ erred in evaluating the medical evidence in the record concerning her physical limitations.  The Court disagrees.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick, 157 F.3d at 722.  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample, 694 F.2d at 642.  In such cases, "the ALJ's conclusion must be upheld." Morgan, 169 F.3d at 601.  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester, 81 F.3d at 830.  Even when a treating

ORDER - 11

or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan, 242 F.3d at 1149. An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if that opinion "is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff first argues the ALJ erred in finding she had no restrictions in her ability to sit, asserting that she had to alternate between sitting and standing "man[y] times during the hearing due to pain from sitting." (Dkt. #16, p. 18 (citing Tr. 885-86)). But, as discussed above, the ALJ did not err in discounting plaintiff's credibility concerning the alleged severity of her symptoms and limitations, and therefore was not required to adopt a sitting limitations based solely on her subjective complaints. Plaintiff also asserts the ALJ erred by failing to mention or give a reason

ORDER - 12

for not adopting Dr. Chowdhry's statement in early February 2006, that she was limited to sitting

and walking for no more than 20 minutes due to her fibromyalgia. See Tr. 519.  But the ALJ did

expressly address this and other statements Dr. Chowdhry provided concerning plaintiff's ability

to function, stating specifically in relevant part that:

> Dr. Chowdhry performed a physical evaluation . . . in March 2005 wherein he
> opined that the claimant was capable of sedentary work with frequent breaks
> due to her fibromyalgia, malnutrition/weight loss, insomnia, and anxiety
> disorder.  I give weight to his opinion regarding the claimant's capability for
> sedentary work, but the evidence does not support that she needs more than
> normal breaks.  Dr. Chowdhry noted that her symptoms showed a good
> response to all medications.  His "need for frequent breaks" comment is likely
> based on the claimant's self-reporting, of which there are significant
> credibility concerns . . . Findings as to decreased range of motion of the left
> shoulder and decreased range of motion in flexion of the back are taken into
> account in the limitation to sedentary work (Ex. C11F).
>
> In a[n] . . . evaluation he performed in February 2006, Dr. Chowdhry stated
> that in response to treatment the claimant had established marked
> improvement in her anxiety, insomnia, mood disorder, and fibromyalgia (Ex.
> C13F/2).  Dr. Chowdhry assessed the severity of the claimant's fibromyalgia
> as moderate.  He included an additional diagnosis of rotator cuff tendonitis,
> which he assessed as of marked severity.  Based on these conditions, he
> opined that the claimant was capable of sedentary work, noting that she was
> limited to periods of sitting and walking of less than 20 minutes (Ex. C13F/3).
> For the same reasons as above, I give weight to his conclusions regarding
> sedentary work, but not to the limited periods of sitting and walking.
>
> In a[n] . . . evaluation in June 2006, Dr. Chowdhry noted on physical
> examination the claimant's decreased range of motion and tenderness of the
> left shoulder and wrist, decreased range of motion of the neck, crepitus of the
> knees, and antalgic gait.  He opined that she was capable of sedentary work
> with no additional restrictions (Ex. C14F/3).  I conclude that physically, the
> claimant is capable of activities consistent with a sedentary exertional level.

Tr. 230.  Thus, not only did the ALJ discuss Dr. Chowdhry's February 2006 statement regarding

plaintiff's ability to sit, but he provided a legitimate reason for rejecting it, noting Dr. Chowdhry

assessed no such limitation in his most recent functional evaluation. See Osenbrock v. Apfel, 240

ORDER - 13

1   F.3d 1157, 1165 (9th Cir. 2001) ("A treating physician's most recent medical reports are highly

2   probative.").   The ALJ thus did not err here.

3         Plaintiff next challenges the following findings made by the ALJ, which read in relevant

4   part:

5
6         Kenneth Kirkwood, M.D., performed a physical evaluation . . . in March
      2004.  Dr. Kirkwood ordered x-rays that showed normal cervical and thoracic
7         spine except for minimal scoliosis and normal lumbar spine except for
      minimal degenerative changes (Ex. C6F/7-8). Dr. Kirkwood listed diagnoses
8         of fibromyalgia and anxiety.  He opined that the claimant was capable of
      sedentary work.

9
10   Tr. 229.  Plaintiff argues the ALJ erred by not discussing or stating why he was not adopting the

11   marked (i.e., "[v]ery significant interference") limitations Dr. Kirkwood indicated that she would

12   have in her ability to sit, stand, lift, handle, carry, balance, bend, climb, crouch, kneel, pull, push,

13   and stoop. See Tr. 440.  But the ALJ did specifically limit plaintiff to climbing ramps and stairs

14   (with no climbing of ladders, ropes or scaffolds), balancing, stooping, kneeling, crouching, and

15   crawling on only an occasional basis.  Dr. Kirkwood gave no indication he felt more significant

16   limitations were warranted in these areas, such as, for example, a restriction to performing those

17   activities on a less than occasional basis.  In addition, as noted above, a restriction to sedentary

18   work already assumes a limitation in the ability to stand, walk, lift and carry, in regard to which

19   again Dr. Kirkwood indicated no restriction greater than that found by the ALJ.

20
21         In addition, although not specifically addressed by the ALJ, the Court finds a limitation to

22   sedentary work necessarily subsumes within it a restriction on the ability to stoop.  Nor again did

23   Dr. Kirkwood indicate to what extent plaintiff would be limited in her ability to stoop – and, for

24   that matter, in her ability to perform any of the other specific activities noted above – beyond the

25   general overall limitation to a sedentary level of work, even though the physical evaluation form

26   he completed directed him to do so. See id. ("Describe any restrictions: Limited walk, lift, sitting

ORDER - 14

and all above.").  For the same reasons, the Court finds the ALJ did not err in regard to the same

general limitations Dr. Chowdhry marked on the same physical evaluation forms he completed in

March 2005, and February 2006, discussed above.  Also as discussed above, the ALJ did not err

in not adopting the need to take frequent breaks or limitation to sitting and standing for no more

than 20 minutes (or, as noted by plaintiff, the restriction on participation in pre-employment/job

search activities) Dr. Chowdhry also included therein, as the ALJ properly adopted the sedentary

work limitation Dr. Chowdhry opined to in the most recent, June 2006 physical evaluation form

he completed, which did not include either of those further restrictions.

    In his decision, the ALJ also assessed plaintiff with a mental functional residual capacity,

which reads in relevant part:

> **. . . The claimant has the mental capability to: understand, carry out and remember simple . . . instructions; have an average ability to perform sustained work activities (i.e., maintain concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis within customary tolerances of employers' rules regarding sick leave and absence (i.e., eight hours a day, for five days a week, or an equivalent work schedule).  The claimant can exercise normal judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes all within a routine work setting not dealing with the general public.**

Tr. 227 (emphasis in original).  Plaintiff argues the ALJ erred in so finding, again asserting that

the ALJ failed to properly evaluate the medical evidence in the record regarding her functional

limitations.  This time the Court agrees.

    Plaintiff first challenges the ALJ's treatment of the opinions of David C. Brose, Ph.D.,

which reads as follows:

> David C. Brose, Ph.D., performed a psychological evaluation . . . in April 2004 when he diagnosed psychalgia, and noted the claimant's severe social withdrawal and physical complaints and marked motor retardation (Ex. C5F/2).  He opined that the claimant's pain caused profound distraction and assessed severe limitations in the ability to perform routine tasks, but no other

ORDER - 15

> cognitive limitations.  Dr. Brose also assessed severe limitations in the
> claimant's ability to respond appropriately to and tolerate the pressure and
> expectations of a normal work setting, and marked limitations in the ability to
> control physical and motor movements and maintain appropriate behavior.
> He did not believe the claimant had the ability to be gainfully employed (Ex.
> C5F/3).  It is noted that the determination of disability is reserved to the
> Commissioner, not to one-time evaluators (S.S.R. 96-5p).

Tr. 231.  While it is true, as the ALJ notes, that the ultimate issue of disability is reserved solely

to the Commissioner, and thus the ALJ need not accept a medical source's opinion with respect

thereto, the ALJ still is required to address and assess the specific functional limitations found by

that source. See Magellanes, 881 F.2d at 751 (ALJ appropriately may decline to accept treating

physician's opinion regarding ultimate issue of disability, if decision not to do so is supported by

record).  As pointed out by the ALJ himself, Dr. Brose found plaintiff to be severely limited in at

least two mental functional areas. See Tr. 432.  Dr. Brose also found plaintiff to be moderately

and markedly impaired in two other functional areas, opining as well that pain caused "profound

distraction" and interfered with her self-care, and that she "[m]ay have difficulty with abstract

reasoning." Tr. 432-33.  Accordingly, even if the ALJ did not believe Dr. Brose's opinion with

respect to ability to work was supported, the ALJ still should have explained why he declined to

adopt the other parts of his medical opinion.

> Plaintiff also asserts, and the Court once more finds, error in the ALJ's assessment of Dr.

Truschel's opinion, which reads as follows:

> Consultative examiner Dr. Truschel opined that the claimant had trouble
> performing simple and repetitive tasks because her physical limitations
> created problems for her and minor physical exertions triggered her
> fibromyalgia.  He believed that the claimant's attendance would be erratic due
> to physical problems and anxiety (Ex. C7F/7).  Dr. Truschel's opinion is not
> given great weight because it assessed limitations based mainly on the
> claimant's fibromyalgia, which was outside his expertise and contrary to the
> opinion of her treating physician and State agency medical consultants that
> she is capable of performing sedentary work.  As to the claimant's anxiety,
> she herself reported that the primary difficulties she had with work were

ORDER - 16

physical.  Dr. Truschel's opinion is not persuasive.

Tr. 231.  It is true that plaintiff told Dr. Truschel that her mental problems were secondary to her pain and fibromyalgia (see Tr. 446), but this does not mean those problems had no impact on her ability to function.  Indeed, even though Dr. Truschel noted that the anxiety plaintiff experienced had "been attenuated through the use of medications," he nevertheless found her "experience of panic," along with her physical problems, continued "to give her difficulty," and that "[w]ithout further addressing and laying to rest some of the anxiety components," it was "unlikely that she would be able to make a consistent presence in a workplace setting." Tr. 451-52.  In addition, although it may be that Dr. Truschel's area of primary expertise is psychiatry, he still was trained and licensed as a medical doctor, and so is qualified to give an opinion (indeed, especially so) as to the effect plaintiff's fibromyalgia had on, and the interplay it had with, plaintiff's functioning and overall mental health status.  As such, neither stated reason is valid here.

Similarly, as argued by plaintiff, the ALJ erred in making the following findings as well:

Katherine Brzezinski-Stein, Ph.D., conducted a psychological evaluation . . . in March 2005 wherein she diagnosed panic disorder without agoraphobia (Ex. C2F/2).  She rated the claimant's symptoms of verbal expression of anxiety or fear and physical complaints as of marked severity.  Dr. Brzezinski-Stein assessed moderate limitations in the ability to learn new tasks and to exercise judgment and make decisions, and marked limitations in the claimant's abilities to respond appropriately to and tolerate the pressures and expectations of a normal workplace and to control physical movements and maintain appropriate behavior.  She noted that the claimant had limited practical judgment, some impulsivity, and opined that the claimant's fibromyalgia precluded tolerance of full time work (Ex. C12F/3).  Again, this opinion supposedly assessing psychological limitations found that the claimant could not sustain work activity due to her fibromyalgia.  As discussed above, this opinion is entitled to little weight.  Moreover, I note that though she assessed some limitations based on psychological factors, Dr. Brzezinski-Stein assigned a GAF [global assessment of functioning] score of 54, indicating only moderate symptoms or moderate difficulty in social, occupational, or school functioning (Ex. C12F/6).  The GAF score is inconsistent with significant limitations.

ORDER - 17

Tr. 231.  It is true that Dr. Brzezinski-Stein did state plaintiff's fibromyalgia precluded her ability

to tolerate full-time work and required her to take "frequent breaks" (Tr. 513), and that because

she is not a medical doctor, Dr. Brzezinski-Stein's opinion concerning the impact of plaintiff's

fibromyalgia on her ability to function could be discounted on the basis of a lack of qualification

to provide an opinion in this area.  Dr. Brzezinski-Stein, however, also diagnosed plaintiff with a

panic disorder without agoraphobia, and found her to be moderately to markedly limited in four

mental functional areas not specifically linked to plaintiff's fibromyalgia.  <u>See</u> Tr. 512-13.

Further, while a GAF score of 54 may not be indicative of severe, disabling limitations, it is

evidence of at least moderate – i.e., significant – functional limitations the ALJ still was required

to consider and provide proper reasons for rejecting. [6]  The ALJ did not do so here.

Plaintiff argues the ALJ further erred in making the following findings:

Coner LaRue, Ph.D., performed a psychological evaluation . . . in June 2006.
Dr. LaRue assessed as marked the claimant's symptoms of depressed mood,
verbal expression of anxiety or fear, and physical complaints; he assessed
moderate symptoms of social withdrawal and motor retardation.  He listed
diagnoses of bipolar disorder, generalized anxiety disorder with agoraphobia,
and pain disorder (Ex. C15F/2).  Dr. LaRue stated that the claimant
experienced confusion, memory loss, and difficulty sustaining physical tasks;
he assigned marked limitations in the ability to perform routine tasks and
moderate limitations in the ability to understand, remember and follow
complex instructions, to learn new tasks, and to exercise judgment and make
decisions.  He also assessed moderate limitations in the ability to interact

_____

[6] A global assessment of functioning ("GAF") score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" <u>Pisciotta v. Astrue</u>, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).  A GAF score is "relevant evidence" of the claimant's ability to function mentally. <u>England v. Astrue</u>, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" <u>Tagger v. Astrue</u>, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34).  A GAF score indicative of moderate symptoms or difficulties in functioning, such as that assessed by Dr. Brzezinski-Stein here, is "significant" in the relevant sense that those difficulties have more than a *de minimis* impact on plaintiff's ability to perform work-related activities, and thus constitute probative evidence of potential disability the ALJ must consider and deal with appropriately. <u>See</u> SSR 85-28, 1985 WL 56856 *3 (impairment not severe only if evidence establishes slight abnormality having no more than minimal effect on ability to work); <u>see also</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996) (step two inquiry is *de minimis* screening device used to dispose of groundless claims); <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir.1988).

ORDER - 18

1
2
3
4
5
6
7
8
9
10

appropriately in public contacts and to care for self, including personal hygiene and appearance; and marked limitations in the ability to relate appropriately to co-workers and supervisors, to respond appropriately to and tolerate the pressure and expectations of a normal work setting, and to control physical or motor movements and maintain appropriate behavior (Ex. C15F/3). Dr. LaRue is the only psychologist to include a diagnosis of bipolar disorder, noting the claimant's stated historical diagnosis, yet he did not list any objective support for the diagnosis. As with the other psychological evaluations, this is a single evaluation based mainly on the claimant's subjective reports, of which there are credibility concerns. I also note that on mental status examination, Dr. LaRue assigned a GAF score of 55, indicating only moderate symptoms or limitations (Ex. C15F/6), which is inconsistent with his assessment of severe limitations. In addition, despite assessing limitations in the ability to care for self, including hygiene and appearance, on the mental status exam sheet, Dr. LaRue noted no or only mild impairments in hygiene and grooming (Ex. C15F/6). I therefore afford little weight to Dr. LaRue's opinion.

11
12

Tr. 231-32. The Court, once more, finds that the ALJ's stated reasons for rejecting Dr. LaRue's opinion as a whole here to be improper.

13
14
15
16
17
18
19
20
21
22
23
24

It is true that no other medical source in the record that was before the ALJ diagnosed plaintiff with a bipolar disorder.[7] See Tr. 393-94, 431, 451, 512. Dr. LaRue, however, also diagnosed plaintiff with a generalized anxiety disorder and a pain disorder. See Tr. 530. In addition, the fact that a medical source has based his or her opinion on a one-time examination is not a valid basis for rejecting that opinion, given that the opinions of examining medical sources in general tend to be based on only one examination, and that the Commissioner himself often has based his determinations of non-disability on such one-time examinations. It also is true that, as discussed above, a GAF score in the fifties is indicative of only moderate limitations – and therefore that the ALJ would not be entirely remiss in rejecting the more marked limitations assessed by Dr. LaRue on that basis – Dr. LaRue assessed a number of moderate limitations as

25
26

---

[7] Kristi Breen, Ph.D., also diagnosed plaintiff with a bipolar disorder in late July 2007 (see Tr. 861), but as plaintiff herself admits, the ALJ did not have this opinion before him at the time he issued his decision.

ORDER - 19

1   well (see Tr. 531), not all of which the ALJ adopted.[8]

2       Plaintiff next asks the Court to consider the evaluation report and opinion of Kristi Breen,

3   Ph.D., dated July 18, 2007, which the ALJ did not have before him when he issued his decision,

4   but which was submitted to and considered by the Appeals Council in denying plaintiff's request

5   for review of that decision. See Tr. 212-15, 860-63.  Plaintiff argues the Court should consider it,

6   because the findings contained therein are consistent with the other medical source opinions that

7   assessed her mental impairments and limitations.  Defendant concedes this Court may consider

8   additional evidence submitted to the Appeals Council for the first time in determining whether

9   the ALJ's decision is supported by substantial evidence. See Ramirez v. Shalala, 8 F.3d 1449,

10  1451-52, 1454 (9th Cir. 1993) (noting new evidence submitted for first time to Appeals Council

11  becomes part of record for judicial review); see also Harman v. Apfel, 211 F.3d 1172, 1180 (9th

12  Cir. 2000); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996).

13      Defendant argues, though, that since this Court has no jurisdiction to review the Appeals

14  Council's denial of plaintiff's request for review of the ALJ's decision – given that such a denial

15  is not the Commissioner's final administrative decision – the Court should review the additional

16  evidence to determine whether remand for further administrative proceedings is appropriate here.

17  See Mathews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) (noting no statutory authority, source

18  of district court's review authority, authorizes district court to review Appeals Council decisions

19  to deny review).  Plaintiff does not argue otherwise.  Nor does plaintiff contest the assertion that

---

[8] The Court does find, however, that the ALJ properly rejected the moderate limitation Dr. LaRue assessed in regard to plaintiff's ability to care for herself, noting the "[n]o/mild impairment" Dr. LaRue indicated in that area during the mental status examination he performed at the time. Tr. 534; see Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between medical opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding claimant's capabilities is clear and convincing reason for not relying on that assessment.); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989).  But this does not account for the moderate limitations in plaintiff's ability to learn new tasks and in her ability to exercise judgment and make decisions, which the ALJ did not adopt. See Tr. 531.

ORDER - 20

in addition to showing there is a reasonable probability of a change in the outcome of the ALJ's

decision, she must establish "good cause" for failing to produce the new evidence earlier. See

(Dkt. #20, pp. 17-18 (citing Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984), Chen v.

Sullivan, 894 F.2d 328, 332 (9th Cir. 1990), and Mayes v. Massanari, 276 F.3d 453, 462 (9th

Cir. 2001)).

Given the ALJ's errors, discussed above, in evaluating the medical evidence in the record

overall in regard to plaintiff's mental impairments and limitations, there is at least the possibility

that the additional evidence from Dr. Breen ultimately could have changed the outcome of this

matter at the administrative level.  On the other hand, plaintiff has provided no explanation as to

why the findings and opinion of Dr. Breen could not have been provided to the ALJ earlier.  In

other words, a showing of "good cause" has not been made here.  Accordingly, the findings and

opinion Dr. Breen themselves do not provide a proper basis for overturning the ALJ's decision or

warrant remand for further proceedings before the Commissioner.  Nevertheless, once more in

light of the ALJ's improper evaluation of the medical opinion evidence in the record concerning

plaintiff's mental condition, that evidence on remand should be considered by the Commissioner

along with the other medical evidence that is already in the record.

III.     The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability

evaluation process the ALJ must show there are a significant number of jobs in the national

economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20

C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a

vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the

"Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir.

1    2000).

2        An ALJ's findings will be upheld if the weight of the medical evidence supports the

3    hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant

4    v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore

5    must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v.

6    Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's

7    disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d

8    at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations

9
10   he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

11       At the administrative hearing, the ALJ posed a hypothetical question to the vocational

12   expert, which contained substantially the same limitations as those included in the ALJ's RFC

13   assessment. See Tr. 888-89.  In response to that hypothetical question, the vocational expert

14
15   testified that an individual with those limitations, and who has the same age, education and work

16   experience as plaintiff, would be capable of performing other jobs. See Tr. 888-90.  Based on the

17   vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs

18   existing in significant numbers in the national economy. See Tr. 233.  Plaintiff notes that when

19   the limitation of having four to eight hours of unscheduled absences from work per week was

20
21   added to the hypothetical question, the vocational expert testified that competitive work would

22   be precluded. See Tr. 890.  But it is not at all clear that the substantial evidence in the record

23   would support this limitation.

24       Plaintiff further argues that the ALJ ignored, without explanation, the several moderate

25   mental functional limitations found by Carla van Dam, Ph.D., and Thomas Clifford, Ph.D., two

26   non-examining consulting psychologists. See Tr. 402-05.  The Court agrees the ALJ erred in

ORDER - 22

failing to explain why he was not adopting all of those limitations, even though the ALJ found their findings to be "supported by the evidence in the record." Tr. 230.  For example, the ALJ did not adopt the moderate limitations they found in plaintiff's ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workday and workweek, perform at a consistent pace, and respond appropriately to changes in the work setting. See Tr. 402-03; see also Tr. 405 (concluding in narrative portion of evaluation form that plaintiff would benefit from predictable routine to minimize stress and frustration of adapting to changes).  For this reason, and because the ALJ, as discussed above, erred in evaluating the medical evidence in the record concerning plaintiff's mental impairments and limitations overall, remand to the Commissioner for further consideration thereof is appropriate in this matter.

IV.    Remand for Further Administrative Proceedings in this Matter Is Appropriate

        The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

        Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

ORDER - 23

1

2

3

(1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

4

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

5

6

Because issues still remain in regard to the medical evidence in the record concerning plaintiff's

7

mental impairments and limitations, her residual functional capacity and her ability to perform

8

other jobs existing in significant numbers in the national economy, it is appropriate to remand

9

this matter to the Commissioner for further consideration of those issues.

10

<u>CONCLUSION</u>

11

Based on the foregoing discussion, the Court finds the ALJ improperly determined

12

plaintiff to be not disabled.  Accordingly, the ALJ's decision is REVERSED, and this matter

13

hereby is REMANDED to the Commissioner for further administrative proceedings.

14

DATED this 13th day of August, 2010.

15

16

17

18

19

Karen L. Strombom
United States Magistrate Judge

20

21

22

23

24

25

26

ORDER - 24